**In the Matter of William WHITE, Debtor.**

**AGP Grain Cooperative, Plaintiff,**

v.

**William White, Defendant.**

**Bankruptcy No. 03–42552.
Adversary No. 03–4098.**

United States Bankruptcy Court, D. Nebraska.

Sept. 28, 2004.

John T. Tarrell, John Tarrell Law Office, Kearney, NE, for Debtor and Defendant.

Douglas E. Quinn, James J. Niemeier, James G. Powers, McGrath, North, Mullin & Kratz, PC LLO, Omaha, NE, for Plaintiff.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

This matter is before the court on plaintiff's motion for summary judgment (Fil.# 17) and objection by the debtor defendant (Fil.# 23). John Tarrell represents the debtor, and James Niemeier represents the plaintiff. The motion was taken under advisement as submitted without oral arguments. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

AGP Grain Cooperative filed this adversary proceeding to exempt a debt from discharge under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). AGP holds a state court judgment for $931,366.61 plus interest against the debtor arising from his actions as president, director, and shareholder of Atlanta (Neb.) Elevator. AGP now moves for summary judgment on the basis that the state court judgment establishes the relevant elements of non-dischargeability.

The motion for summary judgment will be granted as to the § 523(a)(2)(A) allegations.

## I. Background

Mr. White owned 50 percent of the shares of Atlanta Elevator, Inc., and served as president of the company. The company held a grain warehouse license issued by the State of Nebraska, which is required by state law for any entity that receives grain for storage and/or shipment. In late 2001 and early 2002, Mr. White, in his capacity as president and perhaps manager of the Atlanta Elevator, caused to be issued eight warehouse receipts to AGP Grain Cooperative, representing the purchase of 197,500 bushels of corn and 170,000 bushels of soybeans, in exchange for a total price of $931,366.61.

Warehouse receipts are negotiable instruments, and evidence ownership of grain stored in the issuing warehouse. The receipt contains a specific statement that:

> Grain of the kind, amount, grade, and condition described herein under the provision of the PUBLIC GRAIN

WAREHOUSE ACT OF NEBRASKA, and the Rules and Regulations made and promulgated by the NEBRASKA PUBLIC SERVICE COMMISSION, has been received for storage and upon surrender of this warehouse receipt properly endorsed, with registration properly cancelled and payment of all lawful charges, will be delivered to the order of: [the owner]

During an audit of the elevator in March 2002, a shortage was discovered in the grain inventory. The Nebraska Public Service Commission seized the inventory, closed the elevator, and took control of all of the company's records, as well as some of Mr. White's records. AGP was not able to redeem its warehouse receipts and take delivery of the grain because of insufficient inventory.

AGP asserts that it purchased the grain at issue. Mr. White contends that AGP and Atlanta Elevator had a long-standing arrangement by which AGP provided a line of credit and advanced funds for Atlanta Elevator to purchase grain, for which Atlanta Elevator issued warehouse receipts as collateral. Mr. White indicates that the Public Service Commission has denied AGP's claim to a portion of the funds available to claimants from the sale of what grain was on hand when the elevator was closed and from collection on the company's surety bond, on the basis that AGP was not an owner, depositor, or storer of the grain but had merely advanced funds for future purchases. That decision is currently on appeal to the Nebraska Supreme Court. This information is not in evidence, however, as it comes from the debtor's statement of defenses in the parties' joint preliminary pretrial statement (Fil.# 11).

AGP filed a lawsuit in state court against Atlanta Elevator, Inc., for, *inter alia*, fraudulent misrepresentation, which was stayed by the company's bankruptcy filing. AGP then sued Mr. White in state court on fraudulent misrepresentation, negligent misrepresentation, and deceptive trade practices allegations. Because Mr. White expected possible criminal charges, he invoked his Fifth Amendment right against self-incrimination when AGP deposed him. AGP subsequently filed a motion for summary judgment, which the court granted because Mr. White presented no defense and, by asserting the Fifth Amendment in response to all deposition questions concerning Atlanta Elevator's business dealings with AGP, failed to create any genuine issues of material fact. The court then entered judgment against Mr. White for $931,366.61. Thereafter, Mr. White filed a Chapter 7 bankruptcy petition, and this adversary proceeding followed alleging non-dischargeability of that judgment under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).

AGP moves for summary judgment on the grounds that the state court judgment is res judicata as to the issues of fraud in this case, and alternatively that the evidence in this case establishes the elements of § 523(a)(2)(A) and § 523(a)(4).

II. *Summary judgment standard*

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr.P. 7056); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Morgan v. Rabun,* 128 F.3d 694, 696 (8th Cir.1997), *cert. denied,* 523 U.S. 1124, 118

S.Ct. 1809, 140 L.Ed.2d 947 (1998); *Get Away Club. Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC,* 968 F.2d 695, 699 (8th Cir.1992).

To withstand a motion for summary judgment, the non-moving party must submit "sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact." *Austin v. Minnesota Mining & Mfg. Co.,* 193 F.3d 992, 994 (8th Cir.1999) (quoting *Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 895 (8th Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### III. *Discussion*

#### A. Liability of a corporate officer

■ In this case, AGP's contract was with the Atlanta Elevator, not with the debtor individually. However, it is clearly established, in Nebraska and elsewhere, that a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates, even though his actions may be in furtherance of the corporate business. *Huffman v. Poore,* 6 Neb. App. 43, 569 N.W.2d 549, 558 (1997) (citing 18B Am.Jur.2d *Corporations* § 1882 at 730–32 (1985)).

■ The corporate veil may be pierced to hold a shareholder liable when the shareholder has used the corporation to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Huffman,* 569 N.W.2d at 557. However, when a tort action is brought against an officer or director, there is no need to pierce the corporate veil, and liability will be imposed if the elements of the tort are satisfied. *Id.* See also discussion in *Wolf v. Walt,* 247 Neb. 858, 865–68, 530 N.W.2d 890, 896–98 (1995).

#### B. Res judicata

■ In applying the Eighth Circuit test for whether the doctrine of res judicata bars litigation of a claim, the court examines whether (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was a final judgment on the merits, and (3) both cases involved the same cause of action and the same parties. *Canady v. Allstate Ins. Co.,* 282 F.3d 1005, 1014 (8th Cir.2002). Issues which could have been raised in prior litigation, but were not, are barred as well. *In re Martin,* 287 B.R. 423, 432 (Bankr. E.D.Ark.2003). "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■ The same test applies under Nebraska law. *R.W. v. Schrein,* 263 Neb. 708, 642 N.W.2d 505 (2002):

[T]he doctrine of res judicata applies to bar relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

263 Neb. at 715, 642 N.W.2d at 511 (citing *Baltensperger v. United States Dep't of Agric.*, 250 Neb. 216, 548 N.W.2d 733 (1996)).

### C. Collateral estoppel

Collateral estoppel applies in bankruptcy dischargeability proceedings brought under 11 U.S.C. § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989 (8th Cir.1999). When the parties have previously litigated an issue in a state court, the bankruptcy court will apply the collateral estoppel law of the state. *Id.* In Nebraska, collateral estoppel applies when an issue of ultimate fact has been determined by a final judgment, and that issue cannot again be litigated between the same parties in a future lawsuit. *In re Marcus W.*, 11 Neb.Ct.App. 313, 325, 649 N.W.2d 899, 910 (2002). Four factors must be established to impose collateral estoppel: (1) the identical issue was decided in a prior case; (2) a judgment on the merits was entered, which is final; (3) the party against whom the rule is applied was a party, or in privity with a party, to the prior action; and (4) the parties had an opportunity to fully and fairly litigate the issue in the prior action. *R.W. v. Schrein*, 263 Neb. at 714–15, 642 N.W.2d at 511.

The test in the state courts as to whether the prior judgment decided the identical issue generally is whether or not the same evidence would be necessary in both actions. *Marcus W.*, 649 N.W.2d at 910 (quoting *Suhr v. City of Scribner*, 207 Neb. 24, 27, 295 N.W.2d 302, 304 (1980)). However, in a non-dischargeability proceeding in a bankruptcy case, the question becomes whether the state court judgment establishes the elements of a prima facie case under § 523. *Madsen*, 195 F.3d at 989–90; *Bankers Trust Co., N.A., v. Hoover (In re Hoover)*, 301 B.R. 38, 45–46 (Bankr.S.D.Iowa 2003).

In the present case, the factors have all been met as to the fraudulent and negligent misrepresentation allegations. These same parties were parties to the state court action, which involved the same cause of action and same facts raised here, and the judgment issued by the state court is a final judgment and was made on the merits. A judgment can be considered to have been made on the merits even when a defendant relies on the Fifth Amendment rather than putting on a defense.

> Where a plaintiff in a state court proceeding pleads the issue sought to be precluded, and the defendant files an answer to the charges, and the state court receives evidence on the pleadings, the requirement that the issues be "actually litigated" is satisfied.... Invocation of the Fifth Amendment privilege in the prior suit does not bar a conclusion by this court that the merits of the case were necessarily adjudicated.

*Miles v. Rutledge (In re Rutledge)*, 245 B.R. 678, 683 (Bankr.D.Kan.1999); *National Acceptance Co. v. Bathalter (In re Bathalter)*, 123 B.R. 568, 572 (S.D.Ohio 1990), *aff'd*, 951 F.2d 349 (6th Cir.1991) ("defendant and his counsel were on notice that a summary judgment motion, supported by proof, would be an appropriate mechanism for disposing of the case on the merits if the defendant continued to stand silent"). *See also Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (noting the "prevailing rule" that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them).

Even if collateral estoppel and/or res judicata did not render the state court judgment non-dischargeable, the evidence presented in the adversary proceeding

leads to the conclusion that the debt is non-dischargeable under § 523(a)(2)(A).

### D. 11 U.S.C. § 523(a)(2)(A)

■ Section 523(a)(2)(A) precludes discharge of any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud". To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (8th Cir. BAP 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n. 1 (8th Cir.1987), as supplemented by *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)).

■ Likewise, a false pretense involves an implied misrepresentation or conduct intended to create and foster a false impression. *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (8th Cir. BAP 1999) (citing *In re Guy*, 101 B.R. 961, 978 (Bankr.N.D.Ind.1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression." *Moen*, 238 B.R. at 791 (quoting *In re Malcolm*, 145 B.R. 259,

263 (Bankr.N.D.Ill.1992) and *In re Dunston*, 117 B.R. 632, 639–41 (Bankr.D.Colo. 1990)).

■ "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen*, 238 B.R. at 791 (quoting *Moodie–Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n. 6 (Bankr.D.Minn.1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr.E.D.N.Y.1994)).

■ The evidence before the court includes the affidavit of AGP's director of marketing, Donald Woodburn, who was primarily involved in the relevant transactions with Mr. White and Atlanta Elevator. That uncontroverted evidence indicates Mr. Woodburn was led to believe that the grain represented by the warehouse receipts was in the elevator's possession and was available to AGP. Mr. Woodburn was not told that Atlanta Elevator had insufficient inventory to honor the receipts. AGP sustained a loss in excess of $900,000 in reliance on Mr. White's representations. In response to specific deposition questions[1] about his (1) knowledge as to

---

1. The parties have stipulated that if Mr. White were deposed in connection with this litigation, he would decline to answer based on his Fifth Amendment rights. To that end, the deposition scheduled in this case was cancelled and the parties instead submitted an agreed exhibit (Fil.# 19) setting forth the questions that AGP's counsel would have

whether his representations to AGP were false, and (2) intent that AGP would rely on those representations, Mr. White invoked the Fifth Amendment. The debtor has provided no other evidence. As noted above, the debtor's silence in the face of evidence against him permits the court to draw adverse conclusions against him. Thus, AGP has established a prima facie case under § 523(a)(2)(A).

E. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

 "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose. *See Hunter v. Philpott*, 373 F.3d 873 (8th Cir.2004) ("fiduciary" used in a strict and narrow sense in § 523(a)(4), and fiduciary status must predate the debt); *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878–79 (8th Cir.1985) (for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship).

 It is clear that a corporate officer or director owes a fiduciary duty to the corporation. "An officer or director of a corporation occupies a fiduciary relation toward the corporation and its stockholders, and is treated by the courts as a trustee." *Evans v. Engelhardt*, 246 Neb. 323, 327, 518 N.W.2d 648, 651 (1994). *See also Woodward v. Andersen*, 261 Neb. 980, 990, 627 N.W.2d 742, 751 (2001) (same),

and *Sadler v. Jorad, Inc.*, 268 Neb. 60, 67–68, 680 N.W.2d 165, 172 (2004) (same).

In this case, the plaintiff is a creditor, rather than a stockholder with whom the debtor would clearly have a fiduciary relationship. The debt must have been incurred while the defendant was acting in a fiduciary capacity with respect to the plaintiff for the debt to be non-dischargeable under the defalcation prong of § 523(a)(4). *Hoover*, 301 B.R. at 51.

 When a corporation becomes insolvent, the directors assume a fiduciary duty to the company's creditors. *See, e.g., Helm Fin'l Corp. v. MNVA R.R., Inc.*, 212 F.3d 1076, 1081 (8th Cir.2000) (under Minnesota law, when a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of corporate assets for the benefit of creditors); *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir.2002) (when a corporation becomes insolvent, directors assume a fiduciary or quasi-trust relationship to creditors); *Ingwersen v. Edgecombe*, 42 Neb. 740, 60 N.W. 1032 (1894) (when a corporation becomes insolvent, its property and assets constitute a trust fund for the benefit of its creditors, and the directors and officers in possession thereof, being trustees for all the creditors, cannot take advantage of their position to secure a preference for themselves but must share ratably with other creditors).

 Insolvency generally occurs when the company is unable to pay its debts as they become due in the usual course of its business, or when its liabilities exceed the fair value of its assets. *Wolf v. Walt*, 247 Neb. at 868, 530 N.W.2d at 897.

asked at the deposition and the answer Mr. White would have given to each, invoking his

right against self-incrimination.

There is no evidence before the court as to Atlanta Elevator's solvency at the time of the transactions at issue in this case or at the time the elevator was closed. For that reason, I am unable to find that Mr. White owed a fiduciary duty to AGP, or that he committed fraud or defalcation in that capacity. That portion of the motion for summary judgment will be denied.

The plaintiff's motion for summary judgment (Fil.# 17) is granted. Separate judgment will be entered in favor of the plaintiff. The debt owed by the debtor to AGP Grain, represented by the summary judgment entered in the state court, is non-dischargeable.