**CHEMICAL BANK, Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant.**

No. 78 Civ. 3448 (KTD).

United States District Court,
S. D. New York.

April 9, 1979.

Zalkin, Rodin & Goodman, New York City, for plaintiff; Henry L. Goodman, Harold N. Schwinger, Mark I. Fishman, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant; Thomas R. Pattison, New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge:

This action was commenced by the plaintiff, Chemical Bank, [hereinafter referred to as "Chemical"], against the defendant, Hartford Accident & Indemnity Company, [hereinafter referred to as "Hartford"], seeking recovery under a Bankers Blanket Bond, [hereinafter referred to as "the bond"], issued by Hartford to Chemical. The bond insured Chemical against, *inter alia,* any loss sustained by it through its accepting, receiving giving value for or extending credit upon the faith of securities,

documents or other written instruments which prove to be counterfeits or forgeries.

The Bankers Blanket Bond in question was issued by Hartford to Chemical and was in full force and effect from June 8, 1971 through September 8, 1976 at which time the bond was cancelled by mutual agreement of the parties.

In May of 1971, Chemical entered the first of a series of financing transactions with Sutherland Distributing Corp., [hereinafter referred to as "Sutherland"], and United Entertainment Group, Inc., [hereinafter referred to as "United"]. These financing transactions, numbering in excess of 300, form the basis of the instant action.

Insofar as Sutherland is concerned, its business dealings which form the basis of the financing transactions in issue consisted of Purchase Money Security Agreements, [hereinafter referred to as "PMSA"], between Sutherland, as the vendor of certain equipment and a designated third party as vendee. Those PMSA's which relate to the case at bar number 166. They uniformly recite the purchase price, amount of credit extended by Sutherland, the total finance charges, balance due, the amount and number of monthly installments and a detailed description of the property covered by the PMSA.

Upon execution of these PMSA's Sutherland would assign all its right, title and interest therein to Chemical in return for business loans or extensions of credit.

Turning to United, its business dealings which form the basis of the financing transactions at issue herein consist of some 185 Leases. These Leases, which cover certain equipment owned by United, were executed by United, as lessor, and a third party lessee. The Leases uniformly contain a description of the equipment being leased, the total rent due, the amount and number of monthly payments due and the date upon which these payments would commence.

On the date that a given Lease was executed, United would make a Note payable to the order of Chemical in exchange for a business loan or an extension of credit.

The face value of a given Note would reflect the precise amount due on the United Lease executed on that same day. In addition, the Note would contain a monthly payment schedule, a total number of payments due and a first payment date identical to those contained in the United Lease executed of even date therewith. Finally, the Note would contain, as an exhibit thereto, reference to a chattel mortgage or security agreement of even date between Chemical and United which covered the precise property leased by United on that day to the third party lessee.

In essence then, Chemical was to receive the rental payments due under the Lease and was also to become a secured creditor in relation to the leased property should the lessee default thereon.

Chemical charges that in December 1974, as a result of its own investigation, it determined that a number of the PMSA's and Leases upon which it based its financing transactions with Sutherland and United were forgeries. More particularly, Chemical asserts that the signatures of purported buyers on 166 PMSA's and those of purported lessees on 185 Leases were actually those of Sutherland or United employees, agents or servants rather than those of bona fide third party buyer/lessees. Chemical concludes that the sole purpose in generating these PMSA's and Leases was to represent to Chemical that Sutherland and United had a vested interest in and expectation to those funds which would become due under the terms of the PMSA's and Leases in issue.

Chemical charges that as a result of its accepting these forged PMSA's and Leases in return for business loans and extensions of credit it has incurred a loss totaling $3,919,940.63 of which, upon subtracting the policies $500,000.00 deductible, translates into an "insured loss" totaling $3,419,940.63. It is with respect to this amount which Chemical now moves, pursuant to Fed.R. Civ.P. 56, for summary judgment.

It is quite apparent that Chemical has engaged in a comprehensive investigation of its financing transactions with Suther-

land and United not only to determine the extent of the forgeries involved but also to document the precise loss resulting therefrom. The documentation and precision which it has offered in support of its motion is commendable. Their principal reliance, however, centers upon certain "affidavits of forgery" to which I now turn. The affidavits are those of the buyer/lessees whose names allegedly appear on the documents underlying the financing transactions in issue. A typical affidavit simply recites that upon inspection of a particular PMSA or lease purportedly signed by the affiant as either the buyer or lessee of certain property, the affiant has determined that the "signature is a forgery and was written by a person unknown to [the affiant] and without [his] knowledge or consent."

Plaintiff has submitted a total of 319 "affidavits of forgery" attesting to the fact that 166 of the PMSA's and 153 Leases were forged. These 319 forged documents account for $3,378,379.15 of the total loss incurred by Chemical.

In addition, Chemical charges that it incurred an additional loss of $541,561.48 as a result of extending credit on the basis of 32 forged Leases given it by United for which no affidavits of forgery were submitted. Chemical argues, however, that it is still entitled to summary judgment with respect thereto. In this regard, Chemical offers the sworn testimony of Ms. Doris June Simmons taken at a hearing conducted in the United States District Court for the Western District of Oklahoma, pursuant to § 167 of the Bankruptcy Act, in the course of an investigation concerning the financial affairs of Sutherland and United. Ms. Simmons, employed as an accountant/bookkeeper for United, testified that the books of United contained certain indications next to those Leases which were not legitimate. Thus, by going through the United's books, Ms. Simmons was able to isolate the 32 forged Leases. These 32 sham Leases, Chemical argues, are sufficiently documented by virtue of Ms. Simmons' testimony and, therefore, lend themselves to summary disposition.

Defendant's primary opposition to the instant motion is that insofar as the bulk of PMSA's and Leases are concerned, plaintiff's success with respect thereto necessarily hinges upon the affidavits of forgery. Hartford argues that these affidavits in no uncertain terms place the credibility of the affiants in issue which may truly be tested only by subjecting the affiants to cross examination at a full trial on the merits. Hartford concludes that the question of credibility presents a genuine issue as to a material fact capable of resolution only at trial.

Concerning the 32 leases for which no affidavits of forgery were submitted, Hartford argues that the only documentation offered is the inadmissible hearsay testimony of Ms. Simmons. This, Hartford urges, is clearly an insufficient basis upon which to grant summary judgment. See Fed.R. Civ.P. 56(e).

■ It is now settled that a naked attack upon the affidavits of a moving party is, without more, insufficient to place the credibility of the affiant in issue. Rather, Rule 56 expressly provides that the opposing party "must set forth specific facts" demonstrating that there is a genuine triable issue concerning the credibility of the affiant. This is precisely what defendant has done in the case at bar.

■ Hartford submits that its own investigation reveals that at least 5 of the purported lessees who have supplied a number of affidavits to plaintiff have made payments to Chemical pursuant to Lease agreements which have been assigned to Chemical. While it is unclear whether these payments were made on those Leases allegedly forged, this creates a triable issue of fact. There is also some evidence that certain lessees who have submitted affidavits to plaintiff would often sign these Leases or PMSA's in blank for use in the future as the need arose. In addition, it cannot be denied that these affiants stand to financially relieve themselves of the debts in issue by virtue of their executing the affidavits herein and thereby denying liability thereunder. The motives of these affiants should be tested by cross examination.

In light of the foregoing it is my opinion that defendant has sufficiently attacked the credibility of the affiants so as to place that fact in issue. Furthermore, as to those Leases for which no affidavits were submitted, the testimony of Ms. Simmons is clearly insufficient to warrant summary judgment. As properly observed by defendant, the testimony is simply hearsay and since at this juncture it is premature to determine the availability of Ms. Simmons as a witness, no exception to the hearsay rule is yet applicable. See Fed.R.Evid. 804(b)(1).

Although I am denying plaintiff's motion, I feel constrained to comment on what has thus far transpired. The facts underlying this action have been known to both Chemical and Hartford for over three and one-half years. As previously mentioned, Chemical, at its own expense, has engaged in a comprehensive investigation of these facts. It appears, however, that Hartford's investigation has been somewhat less comprehensive and certainly less sincere. Indeed, much of its opposition to the instant motion was based upon its rather narrow and cursory investigation. Moreover, Hartford relies upon the need for further discovery as a basis for denying summary judgment.

It is the obligation of an insurer upon undertaking the responsibility of insuring a client to reimburse that client within a reasonable time after a claim has been filed. While I realize that the instant claim is somewhat more complex than the average non-commercial claim might be, it is clear that Hartford has been less than conscientious in its investigation of the instant claim. In fact, Hartford's most conscientious efforts to date with respect to this claim have been in opposition to the instant motion.

Thus, it is only with great reluctance that I deny plaintiff's motion for summary judgment. In doing so, however, I am placing Hartford on notice that any further delay in the investigation of the instant claim or in these proceedings will not be tolerated. Accordingly, I hereby direct that all dis-covery in this action be completed within 60 days of my order herein and further direct that upon expiration thereof the case be marked ready for trial.

Accordingly, plaintiff's motion for summary judgment is denied and discovery is to proceed as directed above.

SO ORDERED.