In re James DUGGAN, Debtor.

**FEDERAL TRADE COMMISSION, Plaintiff,**

v.

**James DUGGAN, Defendant.**

**Chapter 7 Bankruptcy No. 892–81510–20. Adv. No. 892–8232–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

July 11, 1994.

---

**11.** 11 U.S.C. § 108(c)(2) (1994).

319

James M. Spears, Gen. Counsel, F.T.C., Barbara A. Di Giulio, Chicago Regional Office, F.T.C., Chicago, IL, Ronald Waldman, Local Counsel, F.T.C., New York Regional Office, New York City, for plaintiff.

John R. Nelson, Long, Tuminello, Besso, Seligman & Quinlan, Bay Shore, NY, and John R. Nelson, Law Offices of Craig D. Robins, Westbury, NY, for debtor.

Stan Y. Yang, Office of U.S. Trustee, Garden City, NY.

Marc Stuart Goldberg, Chapter 7 trustee, Dreyer and Traub, New York City.

## PRELIMINARY STATEMENT

ROBERT JOHN HALL, Bankruptcy Judge.

Before the Court [1] is a motion ("Motion") by the Federal Trade Commission ("FTC") for summary judgment within the Adversary Proceeding it commenced against Debtor. FTC seeks judgment determining that Debtor's liability is non-dischargeable for having been procured through false pretenses, false representations or actual fraud.[2]

For reasons set forth below, the Court holds that FTC's Motion is **GRANTED** upon one of its four bases for the relief requested; FTC is entitled to summary judgment determining Debtor's obligation to it **NON–DIS-CHARGEABLE;** this Adversary Proceeding may be **CLOSED** by our Clerk's Office after the parties' time to appeal this decision has expired.

## RELEVANT FACTUAL BACKGROUND

During the 1980's, Debtor was in the business of buying and selling rare coins. Debtor operated this business through Security Rare Coins, Inc. ("SRC"). On May 22, 1989, FTC filed an action against Debtor in the District Court for the Eastern District of New York, entitled *FTC v. Security Rare Coins, Inc. and James J. Duggan,* Civ. No. CV–89–1683 ("FTC action"). FTC sought to prohibit certain practices of unfair competition, allegedly engaged in by Debtor and SRC, which violated the Federal Trade Commission Act ("FTC Act"). 15 U.S.C. § 45(a) (1994). The FTC Act empowers FTC to bring actions against individuals or entities, on behalf of consumers, to prohibit unfair competition that affects commerce. *Id.* In

response, Debtor filed an answer in which he denied the allegations.

The FTC Action was settled prior to trial ("Settlement Agreement"). Pursuant to the Settlement Agreement, Debtor was to pay $110,000 to FTC, over time.[3] FTC would then distribute the funds collected to consumers who were allegedly injured by Debtor's actions.

The Settlement Agreement did not constitute an admission of wrongdoing or liability by Debtor:

> To avoid the expense of further litigation, for purposes of settlement only and without admission of wrongdoing or liability by any defendant on any cause of action alleged in the complaint in this action ... defendants Security Rare Coins, Inc., ... and James J. Duggan ... have agreed to entry of this Order in settlement....

Settlement Agreement, dated March 1, 1990, at 1.

After making one payment of $10,000, Debtor defaulted. On March 19, 1992, Debtor filed a petition for bankruptcy relief under chapter 7 of title 11, United States Code ("Bankruptcy Code" or "Code"). FTC filed a claim based upon the Settlement Agreement for the unpaid amount of $100,000. FTC then filed a complaint on July 6, 1992, seeking judgment determining its claim non-dischargeable. The basis of the complaint is that Debtor's liability was incurred through fraud and should be excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code. This section excepts from an individual's discharge debts for "money, property, services, or ... credit, to the extent obtained by ... false pretenses, a false representa-

---

1.  The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(I) of title 28.

2.  11 U.S.C. § 523(a)(2)(A) (1994). This section is quoted in relevant part *infra* page 3.

3.  Debtor was to make each payment by certified check to be deposited into an escrow account

controlled by FTC. Debtor was also required to: (1) tender $10,000 no later than 60 days after the date of entry of the district court's order; (2) make additional deposits of $10,000 no later than the anniversary date plus 60 days after entry of the district court's order for each of the next five years; and (3) make an additional deposit of $50,000 no later than six years after the anniversary date, plus 60 days after entry of the district court's order. If any such payment was not made, Debtor would be in default, and the remaining balance would become immediately due and payable.

tion, or actual fraud...." 11 U.S.C. § 523(a)(2)(A) (1994).

FTC subsequently filed its Motion for summary judgment, alleging that there are no triable issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)[4]. In support of the Motion, FTC separately filed with the Court forty exhibits.

FTC alleges that Debtor's obligation derives from fraud because he misrepresented: (1) the investment value of the coins sold; (2) the grade of the coins; (3) the value of the coins; and (4) a guaranty (made orally and in writing) that SRC would repurchase coins sold to consumers at the grade represented at time of sale.

In support of its second assertion, FTC demonstrates that when Debtor or SRC (or its employees) sold coins to consumers, Debtor included with each sale a certificate containing a written representation of each coin's grade ("Certificates")[5]. FTC's exhibits also include affidavits by two numismatists[6] who evaluated the coins and the representations in the Certificates. Both numismatists concluded, under penalty of perjury, that in the Certificates Debtor falsely represented the grades of about three quarters of all coins they evaluated.

Debtor purports to oppose FTC's allegation that he falsely represented the grades of the coins; Debtor states, in his affidavit:

I am trained in the grading of coins, having formal training as well as practical experience gained through involvement in the field for many years. I did not rely solely on my experience in grading coins, however. Prior to 1986, there were three generally recognized grading services.... SRC utilized the services of Accugrade, an independent grading service for the grading of[,] ... in general, any coin with a value greater than $50.00. Accugrade issued certificates stating the grade they assigned to each coin. I am in possession of these certificates.... I used these independent certifications as a check on my grading abilities. Further, if the Accugrade grading agreed with my grading, it verified my representation as to a coin's grade. If the grade I assigned did not agree with that assigned by Accugrade, I would not offer the coins to the general public but rather sell them from my inventory at wholesale with no representation as to grade. These Accugrade certificates were available to SRC customers as verification of a coins [sic] grade as determined by SRC.

. . . . .

[I]n 1986, a group of dealers united and created a grading service known as PCGS. This organization was promoted to the public as the ultimate answer to the problem of coin grading by establishing a "certification service".

. . . . .

... PCGS was ultimately prosecuted by the Federal Trade Commission, the plaintiff herein, for manipulation of the coin market by creating a false market and manipulating coin grading. An action against PCGS was started shortly after I had entered a consent decree in settlement of plaintiff's District Court claims against SRC and me.

. . . . .

---

4. Federal Rule 56 is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056 (1994).

5. All of the Certificates were signed by one of two fictitious persons. This is admitted by Debtor:

SRC used pseudonyms in its literature much like any business engaging in sales and marketing with the general public. For example, the name "Albert Lee" was used for matters which would normally involve the customer service manager, whether in generating literature or in communicating with customers. The use of

such names was to route mail and inquiries to the proper department, depending on the nature of the inquiry, regardless of the person actually filling that position at a given time. Debtor's Opposition ¶ 20. *See also* Defendant's Answers to Interrogatories ¶ 9 ("[SRC's c]ustomer Service Department used pseudonyms of Albert Lee and Allen Turner."). Debtor does not attempt to avoid responsibility for the representations due to these forgeries.

6. A numismatist is one who studies and/or collects items such as coins, metals and paper money. THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1331 (1993).

The plaintiff has supplied affidavits from two "experts" regarding the practices of SRC. I believe that it is significant that one of these "experts", Norman Pullen, was an original member of PCGS. Pullen cites membership in PCGS and certification by PCGS as a coin grader in his credentials. As such, I believe his reliability as a witness is questionable. Further, Plaintiff's expert witness affidavits, although alleging that they were prepared independently after independent evaluation of coins, show substantial similarities in facts and conclusions which I believe to be more tha[n] coincidental, and I believe their reliability as proof of the plaintiff's contentions is questionable.

Debtor's Affidavit in Opposition to FTC's Motion for Summary Judgment ¶¶ 11, 16, 17.

## LEGAL DISCUSSION

■ Debtor's opposition affidavit contains essentially two allegations: The reliability of one of FTC's experts is "questionable" due to his membership in PCGS, an entity that Debtor states was prosecuted by FTC, and the reliability of both experts is questionable because their affidavits "show substantial similarities in facts and conclusions which [Debtor] believe[s] to be more tha[n] coincidental". *Id.* ¶ 17. Neither of Debtor's contentions dispute or assail either affiant's expertise. Once Debtor informs the Court of one affiant's membership in PCGS, he does not claim that this factor inhibits that affiant's honesty or accuracy. Debtor does not state that the affiant, or even PCGS, was ever found to have engaged in any improper activities.

Debtor's second contention regarding the similarities between the affidavits of FTC's experts is inconsequential.

Most importantly, Debtor did not dispute either experts' conclusion that Debtor falsely graded coins. The only evidence offered by Debtor was his own opinion that the reliability of FTC's experts was questionable due to one's membership in PCGS, and to the similarity between the experts' opinions. But questioning the experts' reliability is not the equivalent of disagreeing with either expert's conclusion that the coins were intentionally mis-graded. A single sworn statement by Debtor, or by an expert of Debtor's choice, that the grades of the coins were in fact as he represented in the Certificates could have created a genuine issue of material fact on this point. But Debtor instead alleges, upon quite vulnerable grounds, that each witness' reliability is "questionable".

Debtor's indication that one of FTC's experts is a member of an entity that he states engaged in questionable practices, and that both experts' affidavits contain "substantial similarities" is not an attack upon the truth of either affiant's testimony. We will construe Debtor's suggestion that the reliability of FTC's experts' is "questionable" as an effort to attack their credibility.

■ To defeat summary judgment by attacking the credibility of an affiant who testifies in support of the moving party, a genuine issue as to credibility must be established. *Rose Marine Trans., Inc. v. Kaiser Aluminum & Chem. Corp.*, 758 F.Supp. 1218, 1222 (N.D.Ill.1990)[7]. It is necessary to produce evidence which is sufficient to show that the testimony may be refutable at trial. *Carroll v. United Steelworkers of America, AFL–CIO–CLC*, 498 F.Supp. 976 (D.Md.), *aff'd*, 639 F.2d 778 (4th Cir.1980). Some specific fact relating to credibility must be furnished. *Chemical Bk. v. Hartford Accid. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y.1979) (quoting Federal Rule of Civil Procedure 56)[8].

---

7. The proposition was well stated by the *Rose* court:

Mere arguments (or even persuasive incantations) as to the probable lack of credibility of a non-movant's affidavit, when offered in opposition to a summary judgment motion, cannot suffice to discredit that testimony and pave the way for success on the motion.
*Rose*, 758 F.Supp. at 1222.

8. It is now well settled that a naked attack upon the affidavits of a moving party is, without more, insufficient to place the credibility of the affiant in issue. Rather, Rule 56 expressly provides that the opposing party "must set forth specific facts" demonstrating that there is a genuine triable issue concerning the credibility of the affiant.
*Chemical Bk.*, 82 F.R.D. at 378 (quoting Federal Rule of Civil Procedure 56).

■ Debtor has offered nothing more than, "I believe [each witness'] reliability is questionable." Debtor's Affidavit in Opposition to FTC's Motion for Summary Judgment ¶ 17. This is insufficient. No evidence has been presented which necessitates a trial to ferret out a factor alleged to render either witness' credibility or testimony suspect.

Most fatal to Debtor is the fact that the credibility of a witness is irrelevant where the facts are admitted and there is no genuine issue as to their existence. *Block v. Biddle*, 36 F.R.D. 426, 429 (W.D.Pa.1965); *see C.S. Hammond & Co. v. International College Globe, Inc.*, 146 F.Supp. 514, 515 (S.D.N.Y.1956). Debtor has not disputed the experts' conclusions that most Certificates contain misrepresentations of coin grades. The attack upon their credibility without disputing their opinions is superfluous.

Accordingly, Debtor's effort to attack the credibility of FTC's experts is ineffective to defeat summary judgment.

For the above reasons, FTC's allegation that Debtor falsely graded the coins he and SRC sold produces no material issue of fact. The Court need only analyze whether the misrepresentations in the Certificates constitute fraud sufficient to render Debtor's obligation non-dischargeable under section 523(a) of the Code. *Block v. Biddle*, 36 F.R.D. 426, 429 (W.D.Pa.1965).[9]

■ The analysis is familiar. A debt alleged to be incurred through fraud will be determined to be non-dischargeable where a plaintiff establishes five elements: (1) The debtor must make an express or implied false representation; (2) The representation must be made with the knowledge that it was false at the time it was made; (3) The false representation must be made with the intent to deceive; (4) The creditor must have reasonably relied upon the debtor's misrepresentation(s); and, (5) The creditor must establish that it was damaged. *Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 911, 914 (Bankr.E.D.N.Y.1987), *order aff'd*, 86 B.R. 21

(E.D.N.Y.), *judg't aff'd*, 862 F.2d 304 (2d Cir.1988); *Kotan v. Austin (In re Austin)*, 132 B.R. 1, 3 (Bankr.E.D.N.Y.1991). The standard is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Citibank v. Wiener (In re Wiener)*, 144 B.R. 17, 20 (Bankr.E.D.N.Y.1992); *First Dep. Nat'l Bank v. Pursley (In re Pursley)*, 158 B.R. 664, 667 (Bankr.N.D.Ohio 1993). The Court will discuss each element separately.

As to the first element, Debtor's representation was express as it was in writing and contained within the Certificates issued with each coin sold. The representation was as to the grade of the coins sold. For example, an FTC expert avows:

> These frequent, substantial differences in grades exceed the differences that could be attributable to reasonable differences in interpretation of grading standards or opinions as to condition of the coins by expert numismatists or experienced coin dealers.
>
> .    .    .    .    .
>
> At no time did I [conclude that a coin's grade was] higher than SRC's, which reinforces my opinion that the grading discrepancies were not attributable to subjective differences in grading, but were in fact the result of consistent and unequivocal overgrading.

Declaration of Kenneth M. Goldman ¶¶ 48, 49. The conclusion that Debtor's representations were false is necessary: Both of FTC's experts affirm that Debtor consistently overgraded the coins sold and Debtor failed to deny their statements.

The second element requires that the representation be made with knowledge that it was false at the time it was made. Both of FTC's experts concluded that none of the coins over-graded by Debtor was done so by subjective error. Both stated that at least 73% of the coins were evaluated were overgraded; neither expert found a single in-

---

9. Where the facts are admitted and established beyond all controversy there is no necessity for submission to a jury and it is within the province of the court to declare the law applicable to such facts.

*Block*, 36 F.R.D. at 429–30 (citing *St. Louis Fire & Marine Ins. Co. v. Witney*, 96 F.Supp. 555 (M.D.Pa.1951)).

stance of under-grading. Debtor, who refers to himself as an expert, does not specifically allege that these conclusions are incorrect.

Moreover, at least eight consumers state in affidavits annexed as exhibits to FTC's papers that they placed telephone calls and wrote to Debtor to complain that other dealers considered their coins over-graded. This also was not disputed by Debtor.

■ In assessing a debtor's knowledge of the falsity of the representation under this prong, the Court must consider the knowledge and experience of the debtor. *Union Bank of the Middle East, Ltd. v. Luthra,* 127 B.R. 514, 520 (E.D.N.Y.1991). The facts show that as an expert, it is highly unlikely Debtor was ignorant of the faulty coin grading contained in the Certificates, which exclusively warranted that the coins were of a grade higher than was true. Were he nevertheless ignorant, the same conclusion would be mandated: A false representation made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and this satisfies the knowledge requirement. *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985); *Smith v. Meyers (In re Schwartz & Meyers),* 130 B.R. 416, 423 (Bankr.S.D.N.Y.1991); *Waitman v. Steed,* 157 B.R. 355, 357–58 (Bankr.N.D.Ohio 1993) (citations omitted); *In re Coughlin,* 27 B.R. 632, 636 (Mass.B.A.P.1983) (citing cases); *Livingston v. Hospelhorn (In re Hospelhorn),* 18 B.R. 395, 398 (Bankr.S.D.Ohio 1981) (citing *Houtman v. Mann (In re Houtman),* 568 F.2d 651, 656 (9th Cir.1978)).

■ The next element is that the false representation must be made with intent to deceive. Intent to deceive will be inferred where a debtor makes a false representation and the debtor knows or should know that the statement will induce another to act. *Kimzey v. First Nat'l Bank of Red Bud (In re Kimzey),* 761 F.2d 421, 424 (7th Cir.1985); *AG Credit v. Walton (In re Walton),* 158 B.R. 948, 954 (Bankr.N.D.Ohio 1993) (citing cases); *Dawley v. Gould (In re Gould),* 73 B.R. 225, 227 (Bankr.N.D.N.Y.1987) (citing cases); *Avco Fin. Serv. v. Lesher (In re Lesher),* 80 B.R. 121, 124 (Bankr.E.D.Ark. 1987) (citing cases). Warranting in the Cer-

tificates that the coins consumers are purchasing are of a higher grade than in actuality undoubtedly induced the purchase at a certain price. Were consumers apprised of the true grade, their purchase may not have been made (or might have been made for a lower price).

As stated, no coins were under-graded, and Debtor does not dispute the experts' conclusions that approximately three-quarters of the coins examined were over-graded, or that he knew the actual grades of all coins sold. For all of the foregoing, therefore, whether Debtor intended to deceive does not constitute a material issue of fact.

■ The fourth element requires that the creditor show reasonable reliance upon the debtor's misrepresentation(s). The test to be applied is whether the false representation was a "sufficiently material consideration that in all probability the [creditor would not have acted], had the truth been known." *See Minority Equity Cap. Corp. v. Weinstein (In re Weinstein),* 31 B.R. 804, 810 (Bankr. E.D.N.Y.1983). It seems apparent that consumers would not have invested at the same price had they been aware of Debtor's over-grading. The consumers' reliance upon Debtor's representation was reasonable because: (1) Debtor appeared and claimed to be an expert; (2) the representations were contained in Certificates which signified trustworthiness; and, (3) SRC professed to practice strictly conservative coin grading, giving consumers additional inducement to rely upon Debtor's representations. Accordingly, reasonable reliance has been proved.

The final element a plaintiff is required to establish is that it was damaged as a result of the debtor's false representation. In the case at bar, the consumers did not receive the coins Debtor represented, nor what they believed to be purchasing. That the consumers were damaged, therefore, is not subject to intelligible dispute.

The five requisite elements of FTC's claim have been established. FTC has prevailed over Debtor on each element. Moreover, granting FTC's Motion for summary judgment is appropriate:

A motion for summary judgment will be denied '*unless* the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'

*Arndt v. Hanna (In re Hanna )*, 163 B.R. 918, 922 (Bankr.E.D.N.Y.1994) (quoting *CPY Co. v. Ameriscribe Corp. (In re Chas P. Young Co.)*, 145 B.R. 131, 135–36 (Bankr. S.D.N.Y.1992), *appeal decided by Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988) (quoting *Richardson v. Combs (In re Combs )*, 40 B.R. 148, 151 (Bankr.W.D.Va. 1984))). At bar, Debtor has presented no facts or evidence tending to dispute FTC's claim and its evidence that Debtor misrepresented the grades of coins he or his affiliate, SRC (or its employees), sold. There "is no room for controversy" and no need for trial since Debtor has not put the factual support for FTC's claim into controversy. Thus, a determination upon the law can be made. *Block v. Biddle,* 36 F.R.D. 426, 429 (W.D.Pa. 1965); *see supra* note 9. Upon the law, FTC prevails.

### CONCLUSION

The Court holds, therefore, that FTC's Motion for summary judgment is **GRANTED;** Debtor's obligation to FTC is hereby determined to be **NON–DISCHARGEABLE;** the Adversary Proceeding may be **CLOSED** by our Clerk's Office after the parties' time to appeal has expired.

**SO ORDERED, ADJUDGED AND DECREED.**