# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

99-6008MN

_____

In re: Jerome E. Moen; Jane M. Moen    *

         Debtors    *

The Merchants National Bank of Winona    *

         Plaintiff - Appellee    *

            v.    *

Jerome E. Moen    *

         Defendant - Appellant    *

Appeal from the United States
Bankruptcy Court for the
District of Minnesota

_____

Submitted:  July 20, 1999
Filed: September 15, 1999

_____

Before KOGER, Chief Judge, SCHERMER and SCOTT, Bankruptcy Judges.

_____

KOGER, Chief Judge.

This is an appeal from a bankruptcy court[1] ruling that a debt owed by the debtor/appellant, Jerome E. Moen, to the plaintiff/appellee, The Merchants National Bank of Winona, is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

_____

[1] The Honorable Dennis D. O'Brien, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

Facts

On December 27, 1990, Jerome E. Moen and his wife, Jane M. Moen (who is not a party to either the nondischargeability action or this appeal), entered into a ten-year Equity Credit Agreement with The Merchants National Bank of Winona ("Merchants"), which was secured by a mortgage on the Moens' home. The Equity Credit Agreement provided for a maximum line of credit in the amount of $75,000.00 and clearly stated that it was "an agreement about your home equity line of credit." The Agreement provided that the borrower could request a loan under the line of credit by "writ[ing] a check for at least the minimum advance listed above using one of the special checks you have for that purpose." The Agreement further stated that "[t]o be sure that you pay us the money you may owe us under this plan, we have taken a security interest in the following collateral: 1617 Clubview Rd., Winona, MN 55987." Under the heading ATTORNEY'S FEES, the Agreement stated that the Moens "agree[d] to pay all costs we have (including reasonable attorney's fees and court costs) to collect this debt (unless prohibited by law)." The Equity Credit Revolving Line of Credit Rider, which Jerome Moen signed, provides that "All advances made at any time by [Merchants] in accordance with the terms of the [Equity Credit Agreement] . . . shall be secured by the Mortgage." When Jerome Moen signed the Equity Credit Agreement he understood that the line of credit would be available only as long as the home secured the loan.

Between January 2, 1991, and July of 1996, the Moens periodically borrowed against the home equity line of credit by writing special purpose checks issued by Merchants, and made all payments due under the account. From May of 1994 until July of 1996, the balance due under the line of credit was never less than $68,000.00, and occasionally reached the maximum amount of $75,000.00. In either June or July of 1996, Jerome Moen approached Town and Country State Bank of Winona ("Town and Country") for a $150,000.00 loan for the purpose of expanding his solely owned corporation, the Minnesota City Sweatshirt Company.[2] Town and Country agreed to the loan, but wanted a first secured position in the

---

[2] Before Moen approached Town and Country for a loan, he had acted as a borrower either individually or on behalf of many of his businesses in connection with several commercial and residential loan transactions from various lending institutions, including Merchants.

Moens' home. Moen sought lending from Town and Country because Merchants was unwilling to increase the line of credit under the home equity credit account from $75,000.00 to $150,000.00 in order to finance Moen's proposed expansion of his business.[3] On July 8, 1996, Town and Country paid off the balance due under the Merchants' line of credit in the amount of $73,805.77, and Merchants executed a Satisfaction of Mortgage and released its lien on the Moens' home. Thereafter, Town and Country loaned Jerome Moen the sums requested using the Moens' home as collateral for the loan. Jerome Moen understood that the Merchants' home equity line of credit would terminate when Merchants released the lien on the home.

Merchants, however, failed to terminate Jerome Moen's access to the line of credit. Merchants readily admits that it was a mistake on its part to leave the home equity line of credit open after releasing the lien on the Moens' home. In August of 1996, Merchants sent Jerome Moen a statement for the Equity Credit Plus account which showed that the account balance was paid off on July 8, 1996, and which reflected that the available credit line was $75,000.00. Before receiving this statement, Jerome Moen thought that the home equity line of credit was null and void because the balance had been paid off and the security for the line of credit had been moved to Town and Country. After receiving the statement, Jerome Moen thought the indication that he had $75,000.00 of available credit might be an error, but wondered if the line of credit actually was still open. Jerome Moen called Merchants and spoke to either a bookkeeper or a teller; he did not speak to a loan officer or other officer at Merchants. When Moen asked the bookkeeper or teller if the line of credit was indeed still open, the computer record of the account as observed by the bookkeeper or teller still showed that the line of credit was secured by the Moens' home and was still open. The bookkeeper or teller confirmed that the line of credit was still open.

According to Jerome Moen's testimony, he needed to put a lot of money into his business "fast" in order to expand from 8 to 25 stores. After his conversation with the

---

[3] Previously, in approximately November of 1995, Merchants had refused to extend secured credit in the amount of $9000.00 to Moen's corporation, personally guaranteed by Jerome Moen, for the purchase of a van because the corporation was showing losses, had a highly leveraged position, had a negative cash flow, was not liquid and was rapidly expanding.

3

bookkeeper or teller, Moen rapidly started writing checks on the now unsecured home equity line of credit account. Between August 9, 1996, and August 19, 1996, Moen wrote 5 special purpose checks on the line of credit account totaling $74,263.95. Moen used the funds to purchase inventory and pay bills for his expanding business. Between August 19, 1996, and August 15, 1997, Moen made the monthly minimum payments due on the account and continued to write checks against the line of credit in small amounts. As of August 15, 1997, the balance due on the home equity line of credit account was $71,340.18. Merchants never realized the home equity line of credit account was still open until the Moens filed for bankruptcy protection in October of 1997. Jerome Moen had personally guaranteed most, if not all, of the loans to his solely-owned corporation. When the business failed and it filed for relief under the Bankruptcy Code, the Moens likewise were required to file a bankruptcy case.

Following the Moens' bankruptcy filing, Merchants filed a complaint seeking to have the $71,340.18 debt, plus interest along with attorney's fees and costs, declared nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code. After trial, the bankruptcy court entered judgment in favor of Merchants and granted all of the relief requested in the complaint. Jerome Moen timely appealed from the bankruptcy court's decision.

Jerome Moen challenges three determinations made by the bankruptcy court. First, Moen contends that the bankruptcy court erred in finding that he made false representations in accessing the line of credit and that he knew the representations were false were made. Next, Moen asserts that the bankruptcy court erred in finding that he acted with the purpose and intent of deceiving Merchants. Finally, Moen contends that there was no basis upon which the bankruptcy court could award attorney's fees to Merchants.

Standard of Review

"We review the bankruptcy court's legal conclusions de novo and its factual findings under the clearly erroneous standard." In re Jones, 31 F.3d 659, 661 (8th Cir. 1994)(quoting Miller v. Farmers Home Admin. (In re Miller), 16 F.3d 240, 242 (8th Cir. 1994). "A finding of whether a requisite element of [a] section 523(a)(2)(A) claim is present is a factual

4

determination reviewed for clear error." In re Anastas, 94 F.3d 1280, 1283 (9th Cir. 1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Leuang, 211 B.R. 908, 909 (B.A.P. 8th Cir. 1997)(quoting Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985)). On appeal, the reviewing court shall give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

## Discussion

Section 523(a)(2)(A) of the Bankruptcy Code states that:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>         . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

To prevail under 11 U.S.C. § 523(a)(2)(A) the creditor must prove:

> 1) that the debtor made a representation;
> 2) that at the time the debtor knew the representation was false;
> 3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor;
> 4) that the creditor justifiably relied on such representation; and
> 5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

In re Ophaug, 827 F.2d 340 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995).

5

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995)(quoting 3 Collier on Bankruptcy ¶ 523.08[5], at 523-57 to 523-58 (footnote omitted)). "The concept of actual or positive fraud consists of something said, done, or omitted by a person with the design of perpetrating what he knows to be a cheat or deception." In re Stentz, 197 B.R. 966, 981 (Bankr. D. Neb. 1996).

"A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." In re Guy, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." In re Malcolm, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)(citing In re Dunston, 117 B.R. 632, 639-41 (Bankr. D. Colo. 1990)).

A debtor's silence regarding a material fact may constitute a false representation actionable under section 523(a)(2)(A). See, e.g., In re Van Horne, 823 F.2d 1285, 1287-88 (8th Cir. 1987); In re Larkin, 189 B.R. 234, 239 (Bankr. D. Mass. 1995); In re Demarest, 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995), aff'd, 124 F.3d 211 (9th Cir. 1997); In re Jenkins, 61 B.R. 30, 40 (Bankr. D.N.D. 1986); In re Maier, 38 B.R. 231, 233 (Bankr. D. Minn. 1984). For purposes of section 523(a)(2)(A), a "misrepresentation" denotes "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." In re Melancon, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)(quoting Restatement (Second) of Torts § 525, comment (b) (1976)). In Van Horne, 823 F.2d at 1288 (citations omitted), the Eighth Circuit opined that "[a] borrower has the duty to divulge all material facts to the lender. . . . While it is certainly not practicable to require the debtor to 'bare his soul' before the creditor, the creditor has the right to know those facts touching upon the essence of the transaction."

"In assessing a debtor's knowledge of the falsity of the representation . . ., the Court must consider the knowledge and experience of the debtor." In re Duggan, 169 B.R. 318,

324 (Bankr. E.D.N.Y. 1994). "A false representation made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and this satisfies the knowledge requirement." Id.

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." In re Swan, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)(citing In re Hunter, 771 F.2d 1126, 1129 (8th Cir. 1985)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Van Horne, 823 F.2d at 1287. "Intent to deceive will be inferred where a debtor makes a false representation and the debtor knows or should know that the statement will induce another to act." Duggan, 169 B.R. at 324. The minimum monthly payments made by Jerome Moen on the line of credit after he ran up the balance on the account following the payoff by Town and Country do not operate to negate the intent to deceive. See Demarest, 176 B.R. at 920 ("The intent issue . . . revolves around the procurement of the funds, not the intent to repay or not to repay.").

To succeed with its claim against Jerome Moen under section 523(a)(2)(A), Merchants was required to prove its contentions by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Normally, "exceptions to discharge [are to] be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." Van Horne, 823 F.2d at 1287. However, "[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" Cohen v. de la Cruz, 523 U.S. 213, ___, 118 S. Ct. 1212, 1216, 140 L. Ed. 2d 341 (1998) (citations omitted). "[F]raud may be proved by direct as well as circumstantial evidence, since palpable evidence of the mental state of an individual is rarely, if ever, available." In re Fenninger, 49 B.R. 307, 310 (Bankr. E.D. Pa. 1985).

Additionally, Merchants' mistake in failing to terminate the home equity line of credit after releasing the security has no bearing on the presence or absence of fraud on the part of

7

Jerome Moen. See In re Marlar, 142 B.R. 304, 306 (Bankr. E.D. Ark. 1992); In re Karelin, 109 B.R. 943, 948 (B.A.P. 9th Cir. 1990).[4]

In this case, the bankruptcy court took its cue from the United States Supreme Court's decision in Field v. Mans, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995), and looked to the Restatement (Second) of Torts (1976), for guidance in determining whether Jerome Moen's conduct met the elements of a cause of action under section 523(a)(2)(A). In Field v. Mans, in the context of ruling that a creditor's reliance must be "justifiable" under section 523(a)(2)(A) in order to place a debt beyond discharge, the Supreme Court opined:

> Since the District Court treated Mans's conduct as amounting to fraud, we will look to the concept of "actual fraud" as it was understood in 1978 when that language was added to § 523(a)(2)(A). Then, as now, the most widely accepted distillation of the common law of torts was the Restatement (Second) of Torts (1976), published shortly before Congress passed the [Bankruptcy Reform] Act [of 1978].

Field v. Mans, 516 U.S. at 70, 116 S. Ct. at 443-44. The Supreme Court then proceeded to examine sections 537, 540, 541 and 545A, and the accompanying comments. Id. at 70-71, 116 S. Ct. at 444.

Here, the bankruptcy court generally reviewed sections 525 through 552 of the Restatement (Second) of Torts (1976), and specifically relied upon sections 525, 526, 531 and 532 of the Restatement when making its ruling. Section 525 of the Restatement states:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement (Second) of Torts § 525 (1976).

---

[4] Although Merchants' failure to terminate the line of credit would appear to have created a more difficult row to hoe for Merchants regarding proving the elements of justifiable reliance and proximate cause, Moen does not appeal the bankruptcy court's findings that Merchants satisfied these elements of its cause of action under section 523(a)(2)(A).

Section 526 of the Restatement provides that:

A misrepresentation is fraudulent if the maker
(a) knows or believes that the matter is not as he represents it to be,
(b) does not have the confidence in the accuracy of his representation that he states or implies, or
(c) knows that he does not have the basis for his representation that he states or implies.

Restatement (Second) of Torts § 526 (1976).

Section 531 of the Restatement states that:

One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

Restatement (Second) of Torts § 531 (1976).

Finally, section 532 of the Restatement provides:

One who embodies a fraudulent misrepresentation in an article of commerce, a muniment of title, a negotiable instrument or a similar commercial document, is subject to liability for pecuniary loss caused to another who deals with him or with a third person regarding the article or document in justifiable reliance upon the truth of the representation.

Restatement (Second) of Torts § 532 (1976).

The bankruptcy court found that:

Mr. Moen's testimony on the nature of his alleged call to the bank was less than precise, but the Court concludes that Mr. Moen did call the bank. He did so because his business needed cash and the statement from Merchants

9

Bank indicated that the bank would probably continue to honor Mr. Moen's special purpose checks. He called not to determine if the bank had approved a new, unsecured line of credit, but to determine what would happen if he wrote checks drawing against the old account.

Once he determined that the bank did not recognize its error, and that the checks would be honored, he wrote a series of drafts on this "line of credit" consistent with his earlier borrowing habits while the loan was secured. Mr. Moen did not alert the bank to what he knew to be an error because he planned to use the error to his advantage. The bank had just refused to extend an additional $75,000 of credit on a secured basis and Mr. Moen, an experienced businessman and entrepreneur, knew Merchants Bank would not extend the same $75,000 of credit on an unsecured basis. Mr. Moen knew he was not authorized to use the equity credit line because he knew it was no longer secured by a lien on his home.

Mr. Moen's behavior takes him beyond the critical issue in most § 523(a) cases involving bad checks, the debtor's intent to repay. [Citation omitted.] The writing and presentation of a check denotes a representation that the bank will honor the check. In most cases the court must determine whether the check constitutes a misrepresentation of the debtor's intent to pay the debt. . . . But this Court's determination is much simpler: Did Mr. Moen represent he had a right to credit with the special purpose checks? Since Mr. Moen had no right or reasonable expectancy that Merchants Bank should honor the checks, any such representation was false.

. . . .

Mr. Moen presented special purpose checks, originally issued in conjunction with his secured home equity credit line, to borrow on an account he understood should have been closed. The Court need not fault Mr. Moen for anything said or unsaid in his conversation with Merchants Bank, but signing and negotiating a check on an account he knew was not open to his borrowing manifested a false representation that he was entitled to borrow additional funds on an unsecured basis.

. . . .

The Court accepts the Defendant's testimony that he intended to repay the loan, the payments made to the bank before filing bankruptcy provide further credible support for this position. His reasons for doing so, and his intent to pay back the loan at the time he presented the special purpose checks, are irrelevant. Given the purpose and scope of Mr. Moen's phone conversation to Merchants Bank, the Court can only conclude that when he wrote the checks he knew the account was no longer available, and that he had no right to access it.

. . . .

Mr. Moen clearly hoped and believed the bank would extend additional credit when he wrote the special purpose checks. That places the Plaintiff within the "class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation[.]" Restatement (Second) of Torts § 531 (1976). The evidence of Mr. Moen's intent is circumstantial, but sufficient to establish his intent to deceive. . . .

Mr. Moen admits he never told anyone at the bank that he believed his credit line had been left active by mistake. . . . Mr. Moen's failure to alert the bank of their error is a further demonstration of his intent.

The bankruptcy court properly applied the law and did not err by following the Supreme Court's lead in relying upon the Restatement (Second) of Torts (1976), for guidance in this case. Normally, every action brought under section 523(a)(2)(A) is unique and very fact specific. Even though it may be obvious, based upon the particular facts of a given case, that the debtor has committed fraud, it is not always possible to neatly categorize the conduct that amounts to fraud as being either "actual fraud," a "false representation" or a "false pretense." Here, the bankruptcy court weighed and sorted through the conflicting evidence, correctly applied the law to the evidence presented and made decisions concerning the credibility of the witnesses. The bankruptcy court's factual determinations that Jerome Moen knowingly committed fraud with the intent and purpose of deceiving Merchants within the meaning of section 523(a)(2)(A) are not clearly erroneous.

The evidence before the bankruptcy court shows that Jerome Moen was a sophisticated borrower with extensive lending experience both personally and in connection with his corporation. Jerome Moen was well-versed in secured versus unsecured lending. Jerome Moen knew that continued access to the Merchants' home equity line of credit account was contingent on the Moens' residence remaining as security for the line of credit. After Town and County paid off the balance due under the Merchants' home equity line of credit account in July 1996, Jerome Moen thought the line of credit account was "null and void." After receiving the equity credit account statement following the payoff that mistakenly reflected the unterminated line of credit, Jerome Moen failed to bring the open line of credit to the attention of appropriate officers at Merchants. Instead, Moen merely talked to a bookkeeper or teller, who looked at incorrect data on the computer, and received confirmation that the home equity credit account was indeed still open and accessible. Moen quickly accessed the equity credit account and, beginning August 9, 1996, wrote 5 special

11

purpose checks within a span of 11 days, which raised the balance due on the account to just under the $75,000.00 maximum limit.

A review of the evidence submitted to the bankruptcy court reveals that its conclusion that Jerome Moen knew exactly what he was doing and that his conduct amounted to fraud under section 523(a)(2)(A) is not clearly erroneous. Moen accessed the home equity line of credit account and borrowed money from Merchants with the knowledge that the account was no longer secured and should have been "null and void" because Merchants had released the lien on the Moens' home. Jerome Moen knew that access to the home equity line of credit depended upon Merchants having a secured position in the Moens' home; he knew that Merchants had released the lien; he believed Merchants' failure to terminate the line of credit was probably an error; he had no reason to believe that Merchants would extend the line of credit on an unsecured basis; he wrote checks on an account he knew Merchants should have closed; and as a result of his fraud, Moen obtained almost $75,000.00 in funds to which he was not entitled. Through his fraud, Jerome Moen obtained unsecured financing from Merchants at a time when Merchants was unwilling to increase the secured line of credit from $75,000.00 to $150,000.00.

Finally, the bankruptcy court did not err by awarding Merchants its attorney's fees in this action.[5] The Eighth Circuit Court of Appeals has ruled that attorney's fees provided by contract can become part of the nondischargeable debt under section 523(a)(2)(A). See In re Alport, 144 F.3d 1163, 1168 (8th Cir. 1998); In re Hunter, 771 F.2d 1126, 1131 (8th Cir. 1985). In this case, the Equity Credit Agreement clearly provides that Jerome Moen will pay all costs incurred by Merchants to collect the debt, including reasonable attorney's fees.

Further, last year the United States Supreme Court in Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998), affirmed the lower courts' holding that section 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including an award of punitive damages assessed on account of the fraud plus attorney's fees and costs, and other relief that may exceed the value obtained by the debtor. In Cohen the Hoboken

---

[5] Jerome Moen does not contest the award of costs, which are permitted by Fed. R. Bankr. P. 7054.

Rent Control Administrator determined that the debtor had been charging excessive rents and ordered him to refund $31,382.50 to the affected tenants. The debtor did not comply with this order and subsequently filed a Chapter 7 bankruptcy petition. The tenants filed an adversary proceeding contending that the debt was nondischargeable under section 523(a)(2)(A) and also sought treble damages and attorney's fees and costs under the New Jersey Consumer Fraud Act. The bankruptcy court granted the relief requested by the tenants and ruled that the debt in the total amount of $94,147.50 plus attorney's fees and costs was nondischargeable.

The Supreme Court rejected the debtor's argument that any "debt" incurred for money, property, services or credit obtained by fraud must be limited to the value of the money, property, services or credit actually received by the debtor. The Supreme Court observed that under New Jersey law, because the debtor used fraudulent means to obtain the $31,382.50, he was subject to the imposition of treble damages plus attorney's fees and costs, and opined that:

> Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge. In this case, petitioner received rent payments from respondents for a number of years, of which $31,382.50 was obtained by fraud. His full liability traceable to that sum – $94,147.50 plus attorney's fees and costs – thus falls within the exception.
>                    . . . .
> As petitioner acknowledges, his gloss on § 523(a)(2)(A) would allow the debtor in [certain] situations to discharge any liability for losses caused by his fraud in excess of the amount he initially received, leaving the creditor far short of being made whole. And the portion of a creditor's recovery that exceeds the value of the money, property, etc., fraudulently obtained by the debtor – and that hence would be dischargeable under petitioner's view – might include compensation not only for losses brought about by fraud but also for attorney's fees and costs of suit associated with establishing fraud.

Cohen, 118 S. Ct. at 1216, 1218.

Moen argues that Merchants is not entitled to an award of attorney's fees because the basis for Merchants' cause of action under section 523(a)(2)(A) is that the Equity Credit

13

Agreement was terminated upon release of the mortgage and, therefore, Moen committed fraud by writing special purpose checks on the account after the account should have been closed. Moen contends that if the Equity Credit Agreement was terminated, the provision for attorney's fees is no longer viable. However, Moen confuses the issue of whether he was an authorized borrower under the Equity Credit Agreement with the separate issue of Merchants' right to recover attorney's fees incurred in its attempt to collect the outstanding debt arising from Moen's misuse of the special purpose checks. Here, Moen chose to fraudulently access the home equity line of credit account by writing special purpose checks after Merchants had released the home mortgage and should have closed the account. The terms of the Equity Credit Agreement unequivocally provide that Moen will pay the reasonable attorney's fees expended by Merchants to collect any debt which arose out of Moen's use of the special purpose checks. It makes no difference whether such debt was legally or fraudulently incurred. Under the authority of the Eighth Circuit and Cohen, Merchants is entitled to an award of attorney's fees. The bankruptcy court did not err by making such an award in this case.

Conclusion

The bankruptcy court's judgment is AFFIRMED in all respects.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT

14