# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No.01-6008EM

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Eric Calender, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Eric Calendar, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Eastern |
| v. | * | District of Missouri |
| | * | |
| American General Finance, | * | |
| | * | |
| Appellee. | * | |

———

Submitted: June 5, 2001
Filed: June 18, 2001

———

Before KRESSEL, William A. HILL, and O'BRIEN[1], Bankruptcy Judges.

———

KRESSEL, Bankruptcy Judge.

---

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota, sitting by designation.

The debtor, Eric Calender, appeals from an order of the bankruptcy court allowing the secured claim of appellee American General Finance. Because we think the bankruptcy court incorrectly determined American General's secured claim, we reverse.

## BACKGROUND

The debtor filed a chapter 13 case on March 22, 2000. When he filed, his home in St. Louis was subject to at least three claims of security including a first mortgage which, at the time that the case was filed, had a balance of approximately $92,329.45.[2]

There is also a second mortgage on the debtor's home–a secured home improvement loan. The original mortgagee was Key Home Credit Inc., but the mortgage was assigned to American General about November 10, 2000. American General filed a claim in the amount of $13,938.11, asserting that it has a secured claim for the full amount.[3]

There is also a disputed mechanic's lien filed by Thomas Construction Company. The validity and extent of the mechanic's lien was being litigated in state court at the time that the case was filed. Thomas has filed a proof of claim, but the bankruptcy court granted relief from the automatic stay so that the litigation to resolve Thomas's lien could be resolved in state court.

---

[2] It is somewhat unclear whether this claim is held by Chase Manhattan Bank or Cenlar Federal Savings, although Cenlar filed a claim. The identity of the holder of the claim is not germane since both parties agree that such a mortgage exists and that it is a first lien on the debtor's home.

[3] The proof of claim has not been made part of the record on appeal.

The debtor filed a plan in which he treated both American General and Thomas as unsecured creditors. The plan drew numerous objections, including an objection by American General. American General's objection was based on the fact that it was a secured creditor who was being treated as unsecured. The debtor filed an amended plan on July 7, 2000. While neither the original plan nor this modified plan has been included in the record on appeal, the parties agree that the modified plan also treated American General as an unsecured creditor. American General and others pressed their objections, but after a hearing on September 19, 2000, the bankruptcy court confirmed the debtor's modified plan. The confirmation order was entered on September 27, 2000. No one appealed from the confirmation order.

In the meantime, the debtor, on August 11, 2000, filed an objection to American General's claim.[4] American General filed a response and an evidentiary hearing on American General's claim was held on October 2, 2000. At the conclusion of the evidentiary hearing, the bankruptcy court orally made detailed findings of fact and ultimately found that the debtor's homestead was worth $95,400.00. On October 16, 2000, the bankruptcy court entered an order in which it reiterated its finding that the debtor's homestead was worth $95,400.00. It then allowed American General's claim as a "secured claim in full in the amount of $13,938.11." The bankruptcy court went on to state, "the Trustee is to pay said claim accordingly." The debtor filed a post-trial motion for reconsideration.[5] In his motion, the debtor argued that the bankruptcy court's determination of value was inaccurate and also argued that the disputed lien of Thomas Construction Company, which had not yet been determined, would have priority over the mortgage of American General. That motion was denied on January 19, 2001, and the debtor appealed.

### THE ISSUE

The issue in this appeal is whether the bankruptcy court correctly determined American General's secured claim. While the parties discussed at some length in their briefs the issue of lien stripping, nothing in the record indicates that that was put at issue in the claim objection proceeding, nor decided by the bankruptcy court. The phrase "lien stripping" as used by the parties refers to the prohibition in 11 U.S.C.

---

[4] Neither the objection nor the response was made a part of our record.

[5] The rules recognize no such motion. We construe the motion to be a motion for amended findings under Fed. R. Bankr. P. 7052.

§ 1322(b)(2) which prohibits a chapter 13 plan from modifying the rights of the holder of a claim secured only by a security interest in real property that is the debtor's principle residence, but allows such plans to cram down on other secured creditors. As a result of this antimodification provision, an eligible homestead mortgagee can only be treated in a plan under § 1322(b)(5), which allows a plan to cure defaults over a reasonable time and maintain the contractual payments.

In *Nobleman v. American Savings Bank*, 508 U.S. 324 (1993), the Supreme Court held that § 1322(b)(2)'s antimodification provision protect a creditor who is "secured" by the homestead even if it is not the holder of a secured claim within the meaning of 11 U.S.C. § 506(a). Since that decision, a number of courts have held that *Nobleman* only applies when the creditor holds some secured claim. According to these courts, a plan may modify the rights of a creditor who is secured as a matter of state law but who is not the holder of a § 506(a) secured claim. *See, e.g. McDonald v. Master Financial (In re McDonald)*, 205 F.3d 606 (3rd Cir. 2000); *Tanner v. FirstPlus Financial (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowner Ass'n (Matter of Bartee)*, 212 F.3d 277 (5th Cir. 2000); contra In re Cater*, 240 B.R. 420 (Bankr. M.D. Ala. 1999); *In re Mattson*, 210 B.R. 157 (Bankr. D. Minn. 1997).

However, cramdown and lien stripping are confirmation issues which were presumably explicitly or implicitly resolved when the bankruptcy court confirmed the debtor's plan.[6] In other words, what a creditor's secured claim is and how much has to be paid to the creditor are two different issues. In fact, it is the very point of § 1322(b)(2) that eligible creditors are paid in full regardless of what their secured claims are.

---

[6] The actual "lien stripping" is the result of § 1327(c) which provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327(c).

DISCUSSION

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Merchant's Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999).

The determination of secured claim is governed by § 506(a) which provides in part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

The first step in determining a secured claim is to determine the value of the collateral, here the debtor's homestead. The bankruptcy court did that, finding that the debtor's homestead was worth $95,400.00. That finding is amply supported in the record and is not clearly erroneous.

The next step in determining a creditor's secured claim is to subtract prior encumbrances from the value of the collateral. In this case, that would be the first mortgage and possibly Thomas's mechanics lien. The bankruptcy court failed to make such a computation. Leaving aside the disputed mechanics lien claim, it is clear that the first mortgage of $92,329.45 should be subtracted from the value of the homestead of $95,400.00, leaving a maximum of approximately $3,000.00 to secure American General's claim. Thus, without considering the mechanics lien, American General's secured claim could be no more than $3,000.00. In addition, the bankruptcy court failed to consider the effect of the mechanics lien claim. If, as argued by the debtor, that claim has priority over the claim of American General, then there would be no value left to secure American General Finance's claim. It would then have no secured claim. We therefore feel compelled to reverse the order of the bankruptcy court and remand so that the bankruptcy

5

court can determine the secured claim of American General Finance in light of the first mortgage and the mechanics lien claim.[7]

We are also troubled by the last sentence of the bankruptcy court's order directing the trustee to pay American General's secured claim "accordingly." We are not sure what "pay accordingly" means in this context. The parties both assume that it means that the secured claim must be paid in full. That is certainly a reasonable construction. However, such a direction seems to us to conflict with the bankruptcy court's order confirming the debtor's plan which provides for treatment of American General as an unsecured creditor. On remand, the bankruptcy court should consider whether or not the claim objection proceeding is moot as a result of confirmation of the debtor's plan. Since the parties are bound by the plan, it may well be that the amount of American General's secured claim may be irrelevant. Whatever payment it receives would be governed by the confirmed plan. We leave it to the bankruptcy court to determine the effect of confirmation of the debtor's plan on the claim objection.

CONCLUSION

Because we think the bankruptcy court's determination of American General's secured claim was mistaken and that it erred in directing the trustee to pay American General's claim, we reverse the order of the bankruptcy court and remand to the bankruptcy court for proceedings consistent with this opinion.

---

[7] It is certainly within the discretion of bankruptcy court to wait for the mechanics lien amount and priority to be determined in the state court.

A true copy.

Attest:

              CLERK, U.S. BANKRUPTCY APPELLATE
              PANEL, EIGHTH CIRCUIT.