**In re Marc T. HOFFMANN, Debtor.**

**Ronald J. Koller, Plaintiff,**

v.

**Marc T. Hoffmann, Defendant.**

**Bankruptcy No. 11–46410.**
**Adversary No. 11–4751.**

United States Bankruptcy Court,
D. Minnesota.

June 13, 2012.

Daniel M. Eaton, Christensen Law Office PLLC, Minneapolis, MN, for Plaintiff.

Randall K. Strand, Randall K. Strand PA, Roseville, MN, for Defendant.

### MEMORANDUM OPINION AND ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This adversary proceeding came on for trial on May 8, 2012 on the plaintiff's complaint seeking a determination that the defendant's debt to him is excepted from the defendant's discharge. Jill A. Brisbois and Daniel M. Eaton appeared for the plaintiff. Randall K. Strand appeared for the defendant. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

### FACTS

1. Defendant Marc T. Hoffmann is the owner and sole officer of Lakes Area Home Buyers, Inc.
2. Hoffmann is the owner and sole officer of Gunflint Property Holdings, LLC.
3. Including this transaction, Plaintiff Ronald J. Koller has been involved in buying or selling a house three times during the past 31 years.
4. Since 1998, Hoffmann has conducted between 120 and 270 real estate transactions involving similarly styled trusts and participated in over 5,000 hours of real estate training classes.
5. Hoffmann met Koller in the fall of 2005. Including the initial meeting, they met on two separate occasions to discuss a transaction in which Koller and his wife Carol would sell their home, located at 1896 Florence St., White Bear Lake, MN 55110 to Lakes Area Home Buyers. The Kollers agreed to sell their home to Lakes Area Home Buyers.
6. Hoffmann provided the purchase agreement and all other documents used to effect the sale of the Kollers' home.
7. The purchase agreement is a one page document signed on August 23, 2005 by Hoffmann on behalf of Lakes Area Home Buyers and Ronald and Carol Koller. The agreement stated that Lakes Area Home Buyers is the buyer and the Kollers are the seller with a total purchase price of $191,680. A total of $69,680 was seller financed evidenced by a promissory note and the balance of $122,000 was "subject to" existing loans. "Subject to" means the buyer "is not expressly assuming responsibility for the underlying loans" but agrees to make the payments required by the loan. The agreement stated that in case of default on the seller financing, the Kollers' only recourse was against the property. Additionally the agreement called for either a mortgage or "other customary security agreement" subordinate to the existing mortgage with Wells Fargo. Finally, a handwritten provision called

for Lakes Area Home Buyers to "cash out seller within 18 months."

8. The October 14, 2005 closing [1] included the following:

 a. Hoffmann, on behalf of Lakes Area Home Buyers, executed a promissory note to Ronald and Carol Koller in the amount of $69,680. The note required the principle balance be paid in full on or before April 14, 2007. Additionally, the endorser of the note agreed "to pay all costs of collection, including a reasonable attorney's fee ... on the principle ... at the respective maturity[.]"

 b. A mortgage was signed by Hoffmann as an officer of Lakes Area Home Buyers, the grantor, and named Ronald and Carol Koller as the grantees. The mortgage covenanted that Lakes Area Home Buyers held the property in fee simple and that it was free of encumbrances. It also stated that a default may result in the principal becoming due and payable upon the Kollers' declaration.

 c. A "Certification of Trust" was signed by the Kollers' as the beneficiaries, Robert Shutan as the Trustee and Hoffmann as the witness. The trust is named "The Koller Family Trust." The first line of the "Trust Addendum" states, "Addendum to Contract of Sale Dated August, 2nd 2005 by and Between Ronald John Koller AND Carol J. Koller as Seller(s) and Lakes Area Home Buyers, Inc. as Purchaser(s) ..." The addendum contains a paragraph stating "[s]eller is aware that this loan will not be satisfied in full at closing and may continue to appear on Seller(s) credit file." It further states that "[b]oth Seller(s) and Purchaser(s) are fully aware that the mortgage(s) securing the property stated above contain provisions prohibiting the transfer of any interest in the property without satisfying the principal balance remaining on the underlying loans and/or obtaining the lender's prior written consent ... this transaction may violate said mortgage(s)." The document also states that if Wells Fargo discovers this illegal transfer, then Wells Fargo may call the loan due, payable in full or may commence proceedings to recover title and ownership of the home.

 d. The Kollers executed a "Warranty Deed to Trustee." The Kollers, as grantors, transferred title to their home in fee simple to "Robert L. Shutan as Trustee of the Koller Family Trust." The deed defines the beneficiary's interest as "declared to be personal property" and only in the form of "earnings, avails or proceeds" of the sale or other disposition of the house.

 e. Two identical documents titled "Assignment of the Beneficial Interest in the Koller Family Trust" were signed: one signed by Ronald Koller and Shutan and the other signed by Carol Koller and Shutan. Both documents were notarized. For "valuable consideration," the Kollers assigned 100% of their beneficial interests in the Koller Family Trust to Gunflint Property Holdings.

 f. The accompanying trust agreement is a 31 page document that defines the trust, beneficiaries, trustee, trus-

---

1. While the closing took place in a bank, a professional closer was not used. Hoffmann was the closer.

tee's powers, trust administration and general provisions. The agreement has several pertinent provisions that help shape the nature of the sales transaction:

i. In "Instructions for Executing Your Trust," step three requires the sellers to assign their beneficial interest to "an entity that limits your liability." The instructions indicate the Kollers could assign their beneficial interests to an entity of their choosing.

ii. Section 3.01 says that "[i]f all initial Trustees shall cease to serve for any reason, Marc T. Hoffmann, shall serve as successor Trustee."

iii. Section 6.06 states that the agreement "shall not be placed on record in the county in which the Trust Property is situated, or elsewhere, but if it is so recorded, that recording shall not be considered as notice of the rights of any person under this Agreement derogatory to the title or powers of the Trustee."

iv. The next section, 6.07, states that "[t]he name of the Trustee shall not be used by the Beneficiaries in connection with any advertising or other publicity whatsoever without the written consent of the Trustee."

v. Section 6.11 allows the beneficiaries to terminate the trust with 30 days written notice returning the *res* to the beneficiaries.

9. Hoffmann did not provide the closing documents to the Kollers prior to the closing date.

10. The Kollers believed this agreement provided them the option to reclaim ownership of the house in the event Hoffmann defaulted on the payments.

11. The Kollers believed this agreement provided that their children would become the beneficiaries of the Koller Family Trust if Ronald and Carol died.

12. Hoffmann knew that this transaction did not provide the Kollers with a security interest in the home and that neither the Kollers nor their heirs would be the beneficiaries of the trust.

13. The Kollers would not have entered into this transaction if they knew it did not provide them with a security interest in their home.

14. The Kollers' home was used as a rental property and Hoffmann, through Lakes Area Home Buyers via Gunflint Property Holdings, collected the rents.

15. Shutan sent a notarized letter to Hoffmann on November 20, 2005 resigning as trustee of the Koller Family Trust.

16. Between October 15, 2005 and April 2007, Lakes Area Home Buyers made eighteen $500 monthly payments to Koller totaling $9,000.

17. On or around April 2007 Hoffmann told Koller that Lakes Area Home Buyers could not make the balloon payment required by the October 14 promissory note.

18. On behalf of Lakes Area Home Buyers, Hoffmann executed a new promissory note dated May 10, 2007 promising to pay the Kollers the principal sum of $60,180. The new note called for a $25,000 initial payment with subsequent monthly payments of $500 until the earlier of either sale of the property or July 31st, 2007 at which time the principle balance would be due. The note called for annual accruing interest of 5% on any out-

standing balance. The new note contained a provision identical to the first promissory note requiring Lakes Area Home Buyers to pay all collection costs including reasonable attorney's fees.

19. Lakes Area Home Buyers made the initial $25,000 payment with the promissory note and made five additional $500 payments to Koller between June 1, 2007 and September 17, 2007.

20. On December 6, 2007, Paul Gray of El Paso County, Colorado, signed two notarized Minnesota forms number 40.1–M, Minnesota Uniform Conveyancing Blank. One was titled "Certificate of Trust" and the other "Affidavit of Trustee regarding Certificate of Trust or Trust Instrument." The certificate of trust named Paul Gray the trustee of the Koller Family Trust. The form identified the Kollers as the settlors and Shutan as the original trustee. The affidavit names Hoffmann as the previous trustee and indicates that Gray has the power to "sell, convey, pledge, mortgage, lease or transfer title to any interest in real property held in trust."

21. The next day, December 7, 2007, Gray, acting as trustee of the Koller Family Trust, entered into a mortgage with Tracy Stubbs. The mortgage names Gray the grantor and Stubbs the grantee and states, "[i]n consideration of 40,000 [sic] and other good and valuable consideration and to secure performance of that obligation, grantor hereby grants, mortgages and conveys unto the grantee all the real property together with all appurtenances and all the estate and rights of grantor in and to" the Kollers' former home. The mortgage document indicates there was a separate agreement[2] signed by both parties and dated that same day.

22. Lakes Area Home Buyers made an additional $25,000 payment to Koller on January 10, 2008 for a total of $52,500 paid on the note. No further payments were made on the seller financing. On this date, the outstanding balance was $8,817.50.

23. The certificate of trust and affidavit naming Gray trustee of the Koller Family Trust and the mortgage between Gray and Stubbs were all recorded in Ramsey County, MN on February 12, 2008.

24. On June 8, 2010, Koller filed a complaint, case number 62–CV–10–6101, against Hoffmann, Lakes Area Home Buyers and Gunflint Property Holdings, *et al*, in the Ramsey County District Court for breach of contract, unjust enrichment, quiet title, declaratory judgment for an equitable mortgage, intentional misrepresentation and fraud, slander of title, civil conspiracy to commit fraud, conversion, civil liability for theft, negligent misrepresentation, and piercing the corporate veil.

25. On May 23, 2011, Koller made a motion in Ramsey County District Court for summary judgment.

26. Hoffmann filed a voluntary chapter 7 petition on September 29, 2011.

27. On October 13, 2011, the Ramsey County District Court held a hearing on Koller's motion for summary judgment. No documents were filed by Hoffmann and neither Hoffmann nor his attorney, Randall K. Strand, made an appearance at the hearing.

2. The separate signed agreement was not part of this record.

28. On October 14, 2011, the Ramsey County District Court granted summary judgment against Hoffmann, Lakes Area Home Buyers and Gunflint Property Holdings finding that the defendants are jointly and severally liable to Koller for: 1. damages of $20,560.02 plus interest, 2. attorney's fees and other legal costs of $41,857.00 including all costs and legal fees for collection, 3. statutory damages of $69,680.00 plus 6% interest annually, and 4. relying on M.S.A. § 604.14, punitive damages of $69,680.00 for a total of 201,777.02.

29. The Ramsey County Court entered judgment against Hoffmann on March 8, 2012.

30. As of the date of this hearing, May 8, 2012, the total principal and interest still outstanding on the second promissory note totaled $10,393.89.

## ANALYSIS

Koller claims Hoffmann's debt to him is excepted from his discharge under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(6). Koller also wishes to hold Hoffmann individually liable for the judgments entered by the Ramsey County Court against Lakes Area Home Buyers and Gunflint Property Holdings by "piercing their corporate veils."

## PIERCING THE CORPORATE VEIL

Koller acknowledges that the Ramsey County District Court judgment against Hoffmann is void due to the automatic stay effective when Hoffmann filed his Chapter 7 petition. Koller seeks to "pierce the corporate veil" of both Lakes Area Home Buyers and Gunflint Property Holdings to hold Hoffmann liable for the Ramsey County Court judgments entered against those two entities.

■ In Minnesota, a two-part test is required to pierce the corporate veil and reach a corporation's shareholder. *Tr. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health and Welfare Plan v. Bjorkedal,* 516 F.3d 719, 731 (8th Cir.2007). The first part of the test considers whether the corporation is the alter ego or a mere instrumentality of the shareholder. *Id.* Several factors must exist to make such a finding including: "insufficient capitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds, nonfunctioning of officers and directors, absence of corporate records, or existence of corporation as a mere façade for individual dealings." *Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979). The second prong of the test requires a "finding of injustice or fundamental unfairness." *Id.* Both prongs of the test must be satisfied to pierce the corporate veil. *Id.* The burden to demonstrate the corporate veil should be pierced belongs to the moving party. *Agristor Leasing v. Guggisberg,* 617 F.Supp. 902, 906 (D.Minn.1985).

■ While Koller demonstrated Hoffmann was the owner and sole officer of the two companies and offered evidence of some sloppy accounting, he did not offer sufficient evidence to meet his evidentiary burden to pierce the corporate veil. Hoffmann is not liable for the state court judgments entered against Lakes Area Home Buyers and Gunflint Property Holdings.

## FRAUD IS A TORT WHICH CREATES PERSONAL LIABILITY

■ Hoffmann is still liable for his own fraud:

One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reli-

ance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement (Second) of Torts: Liability for Fraudulent Misrepresentation § 525 (2011). In other words, even though Hoffmann is not personally liable on the note, if he committed fraud, he is liable to Koller for Koller's pecuniary loss.

Section 523(a)(2)(A) provides:

(a) a discharge under section 727, 141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

 In the Eighth Circuit, an exception to discharge is established under § 523(a)(2)(A) when the plaintiff can prove the following five elements:

1. The debtor made a [false] representation;

2. The debtor knew the representation was false at the time it was made;

3. The representation was deliberately made for the purpose of deceiving the creditor;

4. The creditor justifiably relied upon the representations; and

5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

*R & R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 587 (8th Cir.2010).

The requirements to hold an individual liable for fraudulent misrepresentation under the Restatement (Second) of Torts are a subset of the Eighth Circuit elements necessary for an exception to discharge under § 523(a)(2)(A). A finding that the elements of § 523(a)(2)(A) have been met is a finding that a tort has been committed and individual liability may attach.

## HOFFMANN COMMITTED ACTUAL FRAUD

 "Exceptions to discharge are construed narrowly. The burden of proving that a debt falls within a statutory exception is on the party opposing discharge." *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir.1988) (internal citation omitted). "Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (8th Cir. BAP 1999) *quoting RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

### 1. Hoffmann made representations.

 A false representation under § 523(a)(2)(A) must relate to a past or present fact. *See Freier*, 604 F.3d at 587. Through the titles and characterizations of the documents Hoffmann provided at closing—the most deleterious being the title of the trust instrument—Hoffmann represented to the Kollers that the sales transaction provided them a security interest. Not only did he represent that a security interest in the home was presently provided through the mortgage and promissory notes, he represented that the Kollers' interest was insulated more than typical through the Koller Family Trust.

### 2. Hoffmann knew his representations were false.

■ Hoffmann's experience in real estate transactions is a strong consideration when determining the falsity of his representation. *See Moen*, 238 B.R. at 791. Hoffmann's knowledge of the falsity of his statement is satisfied when he should have known of the falsity. *Id.* Hoffmann knew the Kollers financing was unsecured at the time of closing. He admitted that the trust was designed to protect Lakes Area Home buyers from litigation and that the transaction as a whole did not afford the Kollers a security interest. Hoffmann knew or should have known that transferring title of the house directly to the Koller Family Trust made the mortgage granted by Lakes Area Home Buyers worthless because Lakes Area Home Buyers never held title to the home in fee simple or otherwise. Additionally, by transferring title to the trust, Hoffmann knew or should have known the sales agreement's "recourse against the house" provision left the Koller's with no recourse.

### 3. Hoffmann made these representations with the intent and purpose to deceive the Kollers.

■ Hoffmann must have intended that the Kollers would believe his misrepresentation that their interests were secured. Intent can be inferred from circumstantial evidence. *Moen*, 238 B.R. at 791. While Hoffmann may not have had malicious intentions (as evidenced by the number of payments made (26) and the total amount paid to the Kollers ($61,500 on a $69,680 debt)), a determination of malevolence is not required for non-dischargeability under § 523(a)(2)(A). *Id.*

It is equally plain that Hoffmann's intent and purpose was to deceive the Kollers about the security provided by the sales transaction. His *modus operandi* was to build a façade of legitimacy through artifices such as the void mortgage and deceivingly named trust all the while obfuscating the true legal effects of the sales transaction. Hoffmann's scheme was designed to protect himself and his corporations from potential liability at the expense of his clients. His intent and purpose was for the Kollers to believe this nonrecourse approach to financing provided conventional protection in the event something went awry.

### 4. The Kollers justifiably relied on Hoffmann's representations.

■ "Reliance can be justifiable even though an investigation would have revealed the falsity of a representation." *Freier*, 604 F.3d at 588 *quoting Field v. Mans*, 516 U.S. 59, 74, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). "Justifiable reliance is an intermediate standard between actual reliance and reasonable reliance." *Id.* A close reading—by a lawyer—of all of the documents supplied by Hoffmann for the closing would have revealed the falsity of Hoffmann's representations. Koller is a layperson who prior to this transaction had only been involved in two home purchases and had not yet sold a home. Hoffmann provided the transaction sufficient indicia of legitimacy including providing the paperwork, conducting the closing at a bank and employing a notary public to assuage any concerns of an inexperienced home seller. The Kollers justifiably relied on Hoffmann's representations.

### 5. Koller suffered pecuniary damage as a result of the representations.

Lakes Area Home Buyers did not pay the entire debt it owed to Koller. The total amount still owed under the second promissory note is principal and accrued interest of $10,768.09. Hoffmann's representations indicated the Kollers would be

protected in the event of a default but his scheme left Koller with no recourse to pursue the unpaid balance. The Kollers expected to be paid $69,680 and the payments provided by Hoffmann fell short. Koller suffered pecuniary damage as a direct result of Hoffmann's misrepresentations.

Since I find that Hoffmann obtained the Kollers' home by actual fraud as contemplated by 11 U.S.C. § 523(a)(2)(A) there is no need to address Koller's § 523(a)(6) claim.

## DAMAGES

■■■ Koller relies on *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) for the proposition that Hoffmann is liable for not only actual damages but also the state court judgments against Lakes Area Home Buyers and Gunflint Property Holdings for statutory damages and attorney's fees. In *De la Cruz*, the bankruptcy court awarded the plaintiff a judgment of non-dischargeability that included not only the debt obtained by fraud (excess rents), but also treble damages and attorney's fees under the New Jersey Consumer Fraud Act. *De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 180 (Bankr.D.N.J.1995). The bankruptcy court's ruling was affirmed by the District Court of New Jersey, the Third Circuit, and finally the Supreme Court. *de la Cruz*, 523 U.S. at 215–216, 118 S.Ct. 1212.

The holding of *de la Cruz*, that "any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor," *id.* at 223, is the law but not on point. *de la Cruz* is factually and procedurally distinguishable. In *de la Cruz* the plaintiff presented the state law statutory violations and damages to be part of the litigation and determination of non-dischargeability before the bankruptcy court. All damages were proven to the bankruptcy court and liability of the debtor for attorney's fees was established under New Jersey's Consumer Fraud Act.

Here, Koller relies on the state court judgment awarded by default to establish liability for more than $160,000 in damages and $40,000 in attorney's fees on an outstanding principal debt of less than $9,000. The state court judgment is void *ab initio* as to Hoffmann. *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 325 (8th Cir. BAP 1999). Hoffmann is not liable for the attorney's fees found under the state court judgment. Nor is Hoffmann liable under the promissory note between Lakes Area Home Buyers and Koller. Hoffmann's liability to Koller is established in the law of torts. "The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation." Restatement (Second) of Torts: Damages § 914 (2011).

Under § 523(a)(2)(A) Hoffmann is liable for Koller's pecuniary loss. The pecuniary loss suffered by Koller is the unpaid principal plus any interest accrued at a rate of 5% annually as called for under the second promissory note. The following chart illustrates the payments Hoffmann made and the resulting interest and outstanding balance:

| Payment/ Accrual Date | Accrual Days | Outstanding Balance | Accrued Interest | Payment | Interest Paid | Principal Paid | Principal Balance |
|---|---|---|---|---|---|---|---|
| 10–May–07 | | $60,180.00 | $ 0.00 | $25,000.00 | $ 0.00 | $25,000.00 | $35,180.00 |
| 1–Jun–07 | 22 | $35,180.00 | $ 105.95 | $ 500.00 | $105.95 | $ 394.05 | $34,785.95 |
| 1–Jul–07 | 30 | $34,785.95 | $ 142.86 | $ 500.00 | $142.86 | $ 357.14 | $34,428.81 |

| Date | Days | | | | | | |
|---|---|---|---|---|---|---|---|
| 1–Aug–07 | 31 | $34,428.81 | $ 146.10 | $ 500.00 | $146.10 | $ 353.90 | $34,074.91 |
| 1–Sep–07 | 31 | $34,074.91 | $ 144.60 | $ 500.00 | $144.60 | $ 355.40 | $33,719.51 |
| 17–Sep–07 | 16 | $33,719.51 | $ 73.86 | $ 500.00 | $ 73.86 | $ 426.14 | $33,293.37 |
| 10–Jan–08 | 115 | $33,293.37 | $ 524.13 | $25,000.00 | $524.13 | $24,475.87 | $ 8,817.50 |
| 13–Jun–12 | 1616 | $ 8,817.50 | 1,950.59 | $ 0.00 | $ 0.00 | $ 0.00 | $10,768.09 |
| **Total Payments Made by Hoffmann** | | | | 52,500 | | | |

Hoffmann paid $52,500 on a $60,180 debt accruing 5% interest annually leaving $10,717.72 of unpaid principal and $224.48 of accrued interest. The principal and interest presently owed to Koller totals $10,768.09.

## CONCLUSION

For the reasons stated above, I conclude that Koller met his burden under 11 U.S.C. § 523(a)(2)(A). Hoffmann took advantage of the Kollers' inexperience and trusting nature to induce them to enter into a home sale transaction that left the Kollers' with no recourse in the event of a default under the guise of providing recourse. The defendant's dishonest conduct justifies excepting from discharge the debt plus any resulting interest.

## ORDER

IT IS ORDERED:

1. The plaintiff shall recover from the defendant the sum of $10,768.09 plus costs of $150.00 for a total of $10,918.09.
2. The debt represented by this judgment is excepted from the defendant's discharge.

LET JUDGMENT BE ENTERED ACCORDINGLY.